IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALFORD A. FREEMAN                                          PLAINTIFF

v.                          Civil No. 09-3013

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                             DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Alford Freeman, brings this action under 42 U.S.C. § 405(g), seeking judicial
review of a decision of the Commissioner of Social Security Administration (Commissioner)
denying his claim for a period of disability, disability insurance benefits ("DIB"), and
supplemental security income ("SSI") under Titles II and XVI of the Social Security Act
(hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the
court must determine whether there is substantial evidence in the administrative record to
support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his applications for DIB and SSI on August 23, 2007, alleging an onset
date of January 1, 2005, due to calcium oxalate (kidney stones, back and neck pain, borderline
intellectual functioning, substance abuse, anxiety disorder, mood disorder, and personality
disorder. (Tr. 106-117).  His applications were initially denied and that denial was upheld upon
reconsideration.  (Tr. 73-79, 82-85).  An administrative hearing was held on June 4, 2008.  (Tr.
1-37).  Plaintiff was present and represented by counsel.

At the time of the supplemental hearing, plaintiff was 25 years of age and possessed a
tenth grade education. (Tr. 6-7).  He had no past relevant work experience.  (Tr. 7-, 71).

AO72A
(Rev. 8/82)

On September 24, 2008, the Administrative Law Judge ("ALJ") issued an unfavorable decision. The pertinent findings are as follows:

3.    The claimant has the following severe impairments: substance abuse; borderline intellectual functioning; anxiety disorder; mood disorder; and personality disorder.

4.    The claimant's impairments, including the substance use disorder meet sections 12.04, 12.06, 12.08, and 12.09 of 20 C. F. R. 404, Subpart P, Appendix 1.

5.    If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6.    If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C. F. R. Part 404, Subpart P, Appendix 1.

7.    If the claimant stopped the substance use, the claimant would have the residual functional capacity to lift/carry 25 pounds frequently, 50 pounds occasionally, and to sit/stand/walk for 6 hours each in an 8-hour workday. He cannot drive due to lack of driver's license.   From a mental standpoint, he is able to perform routine work with superficial contact incidental to work with public and co-workers.   Such work has non-complex simple instructions, is learned by rote with few variables, requires little judgment, and supervision is concrete, direct, and specific.

12.    If the claimant stopped the substance abuse use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.

13.    Because the claimant would not be disabled if he stopped the substance abuse, the claimant's substance use disorder is a contributing factor material to the determination of disability.   Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 65-72).

2

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 25, 2008. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 7).

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

3

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    The Evaluation Process:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

After reviewing the entire record, the undersigned has determined that remand is necessary to allow the ALJ to obtain a physical RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Records indicate that plaintiff had a history of kidney stones (calcium oxalate) dating back to at least 1995. (Tr. 237-250, 353-363, 370-388, 400, 411-484, 492-505, 509-560, 567-572). Some required surgical intervention while others passed without surgery. The evidence does show that plaintiff was prescribed Hydrocholorathiazide in 2000, but stopped this medication in 2003 and began passing stones again. (Tr. 237, 240). The medication was then reinstated.

5

Records also indicate that plaintiff had a history of physical injuries due to fights, ATV accidents, and motorcycle accidents.  (Tr. 561-566, 573-575).

On March 2, 2005, plaintiff reported left flank pain and a history of kidney stones.  (Tr. 289-296).  An examination revealed mild CVA tenderness on the left.  Diagnostic testing revealed a 3 to 4 millimeter obstructing stone at the left ureterovesical junction ("UVJ").  Plaintiff was offered admission, but stated he would prefer to be discharged to attempt to pass the stone on his own.  Plaintiff was diagnosed with left ureteral lithiasis and prescribed Percocet for pain.  (Tr. 289-296).

This same date, Dr. David Millstein, a urologist, also evaluated plaintiff.  (Tr. 366-367, 580-581).  He gave plaintiff some information on an Italian study involving a diet lower in sodium and animal protein and higher in fluids.  Dr. Millstein also encouraged increased citrate with lemonade.  He then prescribed Flomax to possibly help him pass the stone.  (Tr. 366-367).  Eight days later, on March 10, 2005, notes from Dr. Millstein indicate that plaintiff passed the stone and it was sent to pathology.  (Tr. 365, 579).

On June 16, 2005, plaintiff was again experiencing right flank tenderness.  (Tr. 364, 578).  A urinalysis showed much calcium oxalate crystals.  As such, Dr. Millstein ordered an intravenous pyelogram ("IVP").  However, the results were normal.  (Tr. 285, 507).

On July 15, 2006, plaintiff sought emergency treatment for left upper arm pain.  (Tr. 273-277, 602-606).  He had abrasions on his upper arm, near his elbow, and on his lower leg.  Plaintiff stated that he had awoken on the ground.  It appeared as though plaintiff had a motorcycle accident and fell off, sustaining a head injury with a loss of consciousness. His family indicated that the left side of his helmet had road rash on it.  A CT scan of his head was

6

unremarkable.  Further, x-rays of his left arm revealed no fractures of dislocations.  Plaintiff was diagnosed with a shoulder contusions, abrasions, and a concussion with a loss of consciousness. He was prescribed Vicodin and discharged home.  (Tr. 273-277).

On September 29, 2006, plaintiff was performing a trick on his motorcycle and fell off landing on his coccyx and then his heels.  (Tr. 270-272, 599-601).  He reported tail bone pain. An examination revealed no bruising or edema.  X-rays showed no fractures or dislocations. Plaintiff was diagnosed with a coccyx contusion and given Demerol and Phenergan.  He was also prescribed Lorcet.  (Tr. 270-272).

On October 3, 2006, plaintiff complained of continued tail bone pain.  (Tr. 267-269, 596-58).  An x-ray of his sacrum/coccyx was within normal limits, revealing no fracture.  Plaintiff was diagnosed with a coccyx contusion and prescribed Lortab and Ultram.  (Tr. 267-269).

On February 19, 2007, plaintiff sought emergency treatment for left flank pain.  (Tr. 258-266, 589-595).  He described the pain as excruciating, doubling-over in nature.  Due to his experience with kidney stones, plaintiff believed this to be his problem.  He reported some nausea, but no vomiting.  At this time, plaintiff indicated that he was on no daily medications. A physical examination revealed a mildly tender suprapubic region with no guarding or rebound. He has some fairly impressive CVA tenderness on the left with percussion and some very mild pain with pressure in the far lateral left upper quadrant as well.  Although plaintiff denied alcohol or drug use, a urine drug screen was positive for marijuana and amphetamines.  An abdominal CT scan revealed a 1.1 centimeter stone at the UVJ with moderate hydronephrosis and moderate hydroureter.  Although recommended, plaintiff declined hospital admission.  Therefore, he was released home with antibiotics to see if he could pass the stone.  Dr. Melissa Quevillon noted

7

there was a good chance he would not pass the stone due to its size. He was told to return if he did not improve within 24 hours. (Tr. 258-266).

On March 4, 2007, plaintiff was driving his motorcycle when he swerved to avoid oncoming traffic in a curve and lost control, sliding into a ditch. (Tr. 252-257, 583-588). He was wearing a helmet. Records indicate that he was ambulatory at the scene of the accident and denied any loss of consciousness. An examination was positive for a headache, neck pain, tenderness in his left ribs, some shortness of breath, and road rash over his right hip. An abrasion on the right lower lumbar was also noted. A CT of his head was within normal limits and x-rays of his cervical spine, chest, and left ribs revealed some cervical spasm or strain, reversal of lordosis, and no gross chest abnormality or pneumothorax. Plaintiff was diagnosed with cervical sprain, contusions, abrasions, and a head injury. He was given Demerol, Phenergan, Lorcet, and Flexeril and released home. (Tr. 252-257).

On June 20, 2007, plaintiff complained of a headache and left jaw pain. (Tr. 319, 391). Plaintiff had reportedly slipped and fallen on a waxed floor, striking his head on the floor. He also complained of mid-to-low back pain after two motorcycle accidents within the last three months. An examination revealed mild left paralumbar muscle tenderness and spasm and mild tenderness to palpation over the left temporal area, but no focal neurologic deficits. Plaintiff was diagnosed with a contusion to the head with a headache and muscular back pain after a motor vehicle accident. He was originally prescribed Ultracet and Robaxin. (Tr. 319). However, this was changed to Ultram and Flexeril due to costs. (Tr. 318).

Given plaintiff's history of kidney stones and multiple accidents involving trauma to his head, back, neck, and face, we believe that the ALJ should have obtained a physical RFC

8

assessment prior to rendering an opinion in this matter.  Because the record does not contain a physical RFC assessment, this case must be remanded to the ALJ to enable him to obtain one.

It is also noted that Dr. Van Smith performed a neuropsychological evaluation on plaintiff and concluded that plaintiff suffered from cognitive dysfunction.  Being well apprised of plaintiff's many head injuries and the fact that testing has indicated that he is functioning within the borderline range of intelligence, we are concerned that Dr. Smith did not discuss plaintiff's history of drug abuse and anxiety/depression.  Research shows that neuropsychiatric disorders may profoundly affect neuropsychological test performance.  *See* The Technology and Therapeutics Assessment Subcommittee of the American Academy of Neurology, *Assessment: Neuropsychological testing of adults. Considerations for neurologists*, 47 NEUROLOGY 592-599, 594 (1996), *at* http://www.aan.com.  Anxiety, depression, psychosis, apathy, and irritability all impact the patient's ability to cooperate with testing and may directly affect cognition.  *Id*. Anxiety and depression impair performance on effort demanding tests.  *Id*.  Memory complaints are common manifestations of depressive disorders, and severe depression is commonly accompanied by psychomotor slowing, impaired attention, decreased cognitive flexibility, and poor retrieval memory.  *Id*.

Substance abuse also adversely affects cognition and performance on neuropsychological tests.  *Id*.  Chronic alcoholism is associated with deterioration in abstraction, visuospatial skills, and problem-solving abilities.  *Id*.  A history of excessive substance use must be sought and integrated into the interpretation of neuropsychological test data.  *Id*.  This is particularly important in the evaluation of patients with histories of head trauma because trauma is common among those with substance abuse.  *Id*.  Accordingly, on remand, the ALJ should submit

AO72A
(Rev. 8/82)

interrogatories to Dr. Smith asking him to explain how plaintiff's drug abuse and psychiatric history would impact the results of plaintiff's neurocognitive tests.  In the event Dr. Smith has not been provided with medical records documenting plaintiff's substance abuse and problems with anxiety/depression, records should be provided to enable him to provide the ALJ with an accurate assessment of plaintiff's abilities.

**IV.**     <u>**Conclusion:**</u>

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of March 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

10